☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | | CASE NUMBER |
|---|---|---|
| ☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | 2020-000433-CA-01 |

| PLAINTIFF(S) | VS.  DEFENDANT(S) | SERVICE |
|---|---|---|
| Yvette  Gomez | City of Doral, a Florida Municipality,<br>and Mayor Juan Carlos Bermudez, | DATE 1/14/20 TIME 12:48<br>BADGE# 502<br>CLOCK IN |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action

on defendant(s): _____ Defendant, City of Doral _____

_____ 8401 NW 53rd Terrace _____

_____ Doral, FL 33166 _____

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: _____ Robert L. Switkes, Esq. _____

whose address is: _____ 407 Lincoln Road PH SE, _____

_____ Miami Beach, FL 33139 _____

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,**
**or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.**
**When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

| | | DATE |
|---|---|---|
| **HARVEY RUVIN**<br>**CLERK of COURTS** | 219401<br>DEPUTY CLERK | 1/10/2020 |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

"If you are a person with a disability who needs any accommodation in order to
participate in this proceeding, you are entitled, at no cost to you, to the provision of certain
assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson
E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400, Miami, FL 33128;
Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via
Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or
immediately upon receiving this notification if the time before the scheduled appearance is
less than seven (7) days; if you are hearing or voice impaired, call 711."

Filing # 101350916 E-Filed 01/08/2020 05:10:28 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 20-433 (a 01

YVETTE GOMEZ,

 Plaintiff,

v.

CITY OF DORAL,
a Florida Incorporated Municipality,
and MAYOR JUAN CARLOS BERMUDEZ,

 Defendants.

_____/

## COMPLAINT

Plaintiff, YVETTE GOMEZ ("Plaintiff") by and through her undersigned counsel, sues Defendants, CITY OF DORAL, a Florida Incorporated Municipality ("Doral") and MAYOR JUAN CARLOS BERMUDEZ ("Mayor Bermudez") (collectively "Defendants"), and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. The Court has jurisdiction over this action because the amount in controversy exceeds the sum of $30,000.00, exclusive of costs, interests and attorneys' fees.

2. At all times material hereto, Plaintiff was and is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

3. At all times material hereto, Defendant, CITY OF DORAL, was and is a municipality in the State of Florida.

4. At all times material hereto, Doral has operated and controlled the Doral Police Department ("Department").

1

5. At all times material hereto, Defendant, MAYOR JUAN CARLOS BERMUDEZ, was an elected official for Doral, acting as the head official, agent, and representative of Doral. Mayor Bermudez, individually and in his official capacity as the Mayor for the City of Doral, was the employer of Plaintiff and is a state actor for purposes of 42 U.S.C. § 1983.

6. Upon information and belief, Mayor Bermudez was and is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

7. Plaintiff was at all relevant times leading up to her termination an employee and agent of Doral, as a law enforcement officer for the Doral Police Department.

8. At all relevant times, Doral was Plaintiff's employer and employed no less than fifteen (15) or more employees for each of twenty (20) or more work weeks in the current or preceding year.

9. Doral is accordingly an "employer" as defined by the Florida Civil Rights Act ("FCRA") and under Title VII.

10. Plaintiff alleges causes of action for sex discrimination, sexual harassment, and retaliation under the FCRA and Title VII, as a result of the sexual harassment she experienced by Doral and its employees, servants, agents, and officials, including Mayor Bermudez, among other causes of action.

11. The violations complained of herein occurred in Miami Dade County, Florida.

12. As more fully set forth below, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 9, 2018, claiming discrimination based on sex and retaliation.

13. On May 7, 2019, after more than six months had passed from the initial filing of her Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the EEOC.

2

14. Furthermore, on or about June 19, 2018, Plaintiff provided notice of her potential claims to Doral's City Manager and Mayor as required by Fla. Stat. 768.28(6).

15. On or about October 21, 2019, the U.S. Department of Justice served its Notice of Right to Sue on Plaintiff. Therefore, this Complaint is timely.

16. Plaintiff has complied with all conditions precedent to suit including compliance with Fla. Stat. 768.28(6) and its requirements.

17. Plaintiff has accordingly exhausted her administrative remedies prior to initiating the instant suit.

18. Venue is proper in Miami-Dade County, Florida, as the causes of actions raised herein occurred in Miami-Dade County, Florida and Doral is a municipality in Miami-Dade County, Florida.

## **FACTUAL ALLEGATIONS**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 18 as if fully set forth herein.

19. In or about April of 2008, Plaintiff, a prospective female employee, interviewed for a position as a law enforcement officer with the City of Doral Police Department (the "Department").

20. During said interview, and based upon sexual animus, Chief Ricardo Gomez ("Chief Gomez"), the City of Doral Police Chief at the time, told another commander, "I do not care how great [Plaintiff] does, she will never be hired."

21. Chief Gomez did not have any valid justification for the above comment, other than sexual discrimination towards Plaintiff, since he had not had any previous interaction with her.

3

22. Despite the aforementioned comments and sentiment, due to another sergeant's recommendation and intervention and Plaintiff's impeccable background, Plaintiff was hired as a law enforcement officer for the Department on or about April 14, 2008.

23. For the years that followed, while under Chief Gomez's management, Plaintiff failed to receive promotions and deserved commendations due to sexual discrimination and was treated disrespectfully and differently than her male coworkers as a female in the Department's male-dominated work environment.

24. On or about January of 2009, a fellow officer and coworker of Plaintiff, Detective Anthony Rodriguez ("Detective Rodriguez"), was terminated from the Doral Police Department. Detective Rodriguez's termination was without justification and only based upon his perceived relationship with Council Member Sandra Ruiz ("Ms. Ruiz").

25. Prior to his termination, Detective Rodriguez allegedly received multiple threats that he would be terminated if he associated with Ms. Ruiz.

26. Chief Gomez and Mayor Juan Carlos Bermudez ("Mayor Bermudez") considered Ms. Ruiz an obstacle and political opponent in her official position. Mayor Bermudez constantly jousted with Ms. Ruiz during their joint professional tenure.

27. Chief Gomez and Mayor Bermudez publicly articulated their desire to remove Detective Rodriguez from the Department for this reason.

28. On one occasion, Plaintiff's police vehicle was set on fire. Plaintiff received a phone call from Ms. Ruiz, showing concern for Plaintiff's well-being. Following this phone call, the Department sent a mass email to all employees indicating that all communications with Ms. Ruiz were to be reported to Chief Gomez. As a result of Plaintiff's communication with Ms. Ruiz, but at no fault of her own, Plaintiff was suspended for three days.

4

29. Following this incident, Chief Gomez and Mayor Bermudez assumed, as they did with Detective Rodriguez, that Plaintiff had a relationship or political connection to Ms. Ruiz.

30. For the years that followed, Plaintiff was subjected to harassment, discrimination, retaliation, and humiliation in the workplace, among other disparate treatment, as a woman and a result of her assumed connection to Ms. Ruiz.

31. On one such occasion, which occurred on or about March 16, 2010, Plaintiff requested an extension of her maternity leave but was denied the extension although Plaintiff had earned the additional time off.

32. Upon her return from maternity leave, Plaintiff requested that her schedule be switched to allow her more time to tend to her newborn child but this reasonable request was also denied. Other male officers requested schedule changes around this same time and these requests were granted without issue.

33. Shortly after Plaintiff's return from maternity leave, false rumors began to circulate that Plaintiff was going to work in pajamas. On or about November of 2010, Plaintiff was reprimanded for wearing "pajamas", meaning jeans, on Sundays. Many male officers wore jeans on the weekends, but Plaintiff, a female, was the only officer reprimanded for this common practice.

34. Plaintiff learned that requests were made from City Hall for Department officials to monitor the surveillance cameras specifically to spy on Plaintiff.

35. Police surveillance cameras are typically utilized in significant criminal investigations or acts of significant criminal malfeasance and not for discriminatory purposes or for alleged minor infractions.

36. Since Plaintiff's pregnancy and incident with Ms. Ruiz, as set forth above, it was clear that the Department's command staff was targeting Plaintiff, a female, looking for any excuse and utilizing false information in a prelude to terminate her.

37. On or about April of 2011, an anonymous source sent a letter to the Miami-Dade State Attorney's Office, accusing the Doral Police Department and Chief Gomez of impropriety and criminal activity.

38. As a result of the letter, the Florida Department of Law Enforcement ("FDLE") investigated the allegations of misconduct.

39. Plaintiff, as with any other officer who possessed relevant information, had a duty to report any wrongdoing and to cooperate with the ongoing FDLE Investigation.

40. The FDLE Investigative Summary included Plaintiff's sworn statement, which implicated Chief Gomez and corroborated the details set forth in the anonymous letter to the State Attorney's Office.

41. As a result of Plaintiff's statement, which set forth Chief Gomez's alleged impropriety, Plaintiff was wrongfully labeled and retaliated against as the whistleblower of the Department's illegal conduct. In other words, Chief Gomez and Mayor Bermudez believed Plaintiff to be the author of the anonymous letter.

42. The FDLE investigation and accompanying Internal Affairs investigation ultimately found Chief Gomez to have violated multiple Department policies. On or about December of 2012, Chief Gomez was officially terminated as a result.

43. While Mayor Bermudez and Chief Gomez were in office, Plaintiff, a female, was continuously harassed and defamed, without any support from the Department's command staff.

44. In November of 2012, the City of Doral finally elected a new mayor.

45. Over the years that followed, Plaintiff was promoted to sergeant while under Chief Richard Blum's and Mayor Luigi Boria's administration and then promoted to lieutenant while under Chief Donald De Lucca's ("Chief De Lucca") administration. Treatment of the Plaintiff significantly improved under these succeeding administrations, especially from the Department's command staff.

46. Plaintiff's quality of work and work ethic were never the issue in Plaintiff's professional advancement and duties. The harassment and sexual discrimination Plaintiff was subjected to, including her lack of advancement, was a product and result of Mayor Bermudez's, and the police chiefs appointed by Mayor Bermudez, personal bias and vendetta against Plaintiff for her alleged political affiliation to Ms. Ruiz, her truthful testimony in an investigation, and her sex as a female.

47. On or about November of 2016, Mayor Bermudez was re-elected as Mayor for the City of Doral. Shortly after his reelection, Mayor Bermudez publicly disparaged Plaintiff to the command staff of the Department.

48. Furthermore, upon his reelection, Mayor Bermudez continued his discriminatory actions towards Plaintiff.

49. In or about January of 2017, Mayor Bermudez reiterated to the command staff his desire to terminate Plaintiff from the Department.

50. In or about March of 2017, Plaintiff, a single mother, was reassigned to work midnight shifts, as a direct result of Mayor Bermudez's actions to harass and discriminate against her.

51. In or about April of 2017, Plaintiff requested to leave the limits of the City of Doral for less than an hour due to a scheduling conflict with her children. Major Jose Seiglie ("Major Seiglie") authorized Plaintiff to do so for any future scheduling conflicts as long as she had her radio on and was able to respond to critical calls.

52. Plaintiff expected this would not be a problem as lieutenants are rarely assigned to respond to calls and enjoy ample flexibility in organizing their schedules. Furthermore, male lieutenants normally enjoy the same accommodations without issue.

53. In or about June of 2017, Payroll Specialist Maria Basulto ("Basulto") resigned from her position with the Department.

54. As a result, Plaintiff, who had been trained in payroll procedures and had helped complete payroll with Basulto for almost four years, agreed to fill in for Basulto in her absence and to input payroll information for Department personnel. Plaintiff did so on a program called Kronos with the help of Human Resources Assistant Director, Rita Garcia ("Garcia"), during Hurricane Irma.

55. The Department's supervisors and command staff were aware of Plaintiff's aid to the payroll department. In fact, Plaintiff would directly communicate with coworkers and supervisors about their schedules and overtime so that she could input the correct information.

56. Plaintiff's squad commended and appreciated her dedication to payroll and overtime worked during a hurricane.

57. Despite the aforementioned, Garcia, at the direction of the command staff, falsely accused Plaintiff of improperly participating in payroll procedures. Plaintiff was wrongfully

8

suspended and disciplined for three weeks as a result and was not paid for the sixty additional hours of overtime she worked during Hurricane Irma.

58. During Hurricane Irma, one of Plaintiff's squad members observed Mayor Bermudez and others drinking alcoholic beverages while working in the command center. Instead of demonstrating regret and embarrassment, Mayor Bermudez and his staff told the observing officer to mind their "own business." While Plaintiff did not personally witness this incident or report it, Plaintiff was wrongfully accused of having reported the incident to the Ethics Committee.

59. In or about December of 2017, as a result of the Kronos incident where she was falsely accused and reprimanded, Plaintiff did not receive her annual raise. Furthermore, Plaintiff's evaluation was initially excellent and commended Plaintiff for her Kronos initiative, especially after Basulto's resignation. However, Plaintiff's evaluation was subsequently changed and lowered due to the false disciplinary matters relating to the payroll incident. There was no question that Plaintiff's evaluation was altered at the direction of the command staff and not as a result of her supervisors' evaluation.

60. For the months that followed, Plaintiff was consistently harassed, micromanaged, and instructed by her supervisors to wrongfully reprimand and evaluate several of the female officers under her command, including those that had witnessed Mayor Bermudez drinking alcohol during Hurricane Irma.

61. In a series of attempts to harass her, the Doral Police Department changed the lieutenant's schedules to twelve hours a day instead of ten hours a day in or about of January of 2018, while Plaintiff was on her three-week suspension. Plaintiff pleaded that her schedule be accommodated due to her minor children, but this request was denied.

62. Shortly thereafter, Plaintiff had a meeting with Captain Rodriguez and Major Seiglie, wherein they allowed Plaintiff to accommodate her schedule, giving their approval. Furthermore, they indicated that this conversation should not be reduced to writing.

63. In late March of 2018, Plaintiff was advised by Captain Carlos Arango ("Captain Arango") that a tracker had been placed on her police vehicle to track when Plaintiff was leaving the limits of the City while on duty.

64. Plaintiff explained that she was not violating any directive since she had her superiors' permission. Nonetheless, Plaintiff was informed that if questioned, her supervisors would deny this and would not support Plaintiff. Plaintiff was also advised that she should resign from her position before she was discriminatorily terminated. Plaintiff knew that a termination would jeopardize her ability to ever work in law enforcement.

65. On or about April of 2018, Chief Hernan Organvidez ("Chief Organvidez") was appointed, and as a close ally of Mayor Bermudez, continued to target and harass Plaintiff.

66. On April 10, 2018, Plaintiff was constructively terminated and forced to resign from her position as Lieutenant for the Doral Police Department. Nonetheless, the Doral Police Department commenced an IA investigation and fraudulently and falsely labeled Plaintiff as having resigned during an open investigation on the FDLE Automated Training Management System, so as to jeopardize Plaintiff's future employment opportunities.

## COUNT I – SEXUAL DISCRIMINATION AGAINST DORAL
### Under Florida Civil Rights Act of 1992 (FCRA), 760.01 et seq., Fla. Stat

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

67. As set forth previously, Doral is an "employer" under the FCRA.

68. Section 760.10 of the FCRA states in relevant part:

10

"(1) It is an unlawful employment practice for an employer:

  i. To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

69. The FCRA accordingly prohibits discrimination based on sex.

70. The treatment and discrimination to which Plaintiff was subjected by Doral, as set forth above and incorporated herein, was the result of Plaintiff's sex/gender, which male individuals were not and would not have been subjected, in violation of the FCRA.

71. Doral's alleged bases for its adverse conduct against Plaintiff and Plaintiff's termination are pretextual and asserted only to cover up the discriminatory nature of its conduct.

72. Even if Doral could assert legitimate reasons for its adverse actions against Plaintiff and Plaintiff's termination, which reasons it does not have, Plaintiffs sex/gender was also a motivating factor for Doral's adverse conduct toward Plaintiff and Plaintiff's termination.

73. Doral, as the employer of Plaintiff, failed to take any prompt and effective remedial action reasonably calculated to result in the prevention and/or remedy of the sexual discrimination of Plaintiff.

74. As a result of Doral's discriminatory actions as a result of her sex, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost economic damages in the form of back pay and front pay, interest, lost benefits, and compensatory damages.

11

75. Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff prays for the entry of a judgment against Doral and an award of economic damages in the form of back pay and front pay, lost wages, interest, lost benefits, pre and post judgment interest, as well as compensatory damages and attorney's fees and costs as a result of Doral's discriminatory conduct in violation of the FCRA and any and all other relief this court deems just.

## COUNT II – SEXUAL DISCRIMINATION AGAINST DORAL
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000.

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

76. Plaintiff is a woman and is an "individual" and "employee" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

77. Doral is a "person" and an "employer" of the Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

78. Title VII of the Civil Rights Act of 1964 states, "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. §2000e et seq.

79. The acts of sex discrimination described herein were done on account of the Plaintiff's sex.

80. The acts of sex discrimination described hereinabove are severe and pervasive and have affected the terms and conditions of the Plaintiff's employment, i.e. termination.

12

81. The acts of sex discrimination described hereinabove were unwelcome and offensive to the Plaintiff.

82. Doral knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials referred to herein were in the control of Doral and the officials of the Department referred to hereinabove were employees and/or agents of Doral and were acting in the course and the scope of their authority.

83. The foregoing acts of sex discrimination violate the Plaintiff's right to be free from sex discrimination under Title VII.

84. As a direct result of the foregoing acts of sex discrimination, the Plaintiff has lost wages and other employment benefits and/or has suffered emotional distress, humiliation, embarrassment, anguish and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for the entry of a judgment against Doral and an award of economic damages in the form of back pay and front pay, lost wages, interest, lost benefits, as well as compensatory damages and attorney's fees and costs as a result of Doral's discriminatory conduct in violation of Title VII.

## COUNT III – SEXUAL DISCRIMINATION AGAINST MAYOR BERMUDEZ
### Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000.

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

85. Plaintiff is a woman and is an "individual" and "employee" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

13

86. Mayor Bermudez is a "person" and an "employer" of the Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

87. Title VII of the Civil Rights Act of 1964 states, "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin..." 42 U.S.C. §2000e et seq.

88. The acts of sex discrimination described herein were done on account of the Plaintiff's sex.

89. The acts of sex discrimination described hereinabove are severe and pervasive and have affected the terms and conditions of the Plaintiff's employment.

90. The acts of sex discrimination described hereinabove were unwelcome and offensive to the Plaintiff.

91. Additionally, Mayor Bermudez directly and intentionally engaged in the discriminatory practices complained of herein with malice and/or with reckless indifference to Plaintiff's protected rights.

92. The foregoing acts of sex discrimination violate the Plaintiff's right to be free from sex discrimination under Title VII.

93. As a direct result of the foregoing acts of sex discrimination, the Plaintiff has lost wages and other employment benefits and/or has suffered emotional distress, humiliation, embarrassment, anguish and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for the entry of a judgment against Mayor Bermudez and an award of economic damages in the form of back pay and front pay, lost wages, interest, lost

benefits, as well as compensatory damages and attorney's fees and costs as a result of Mayor Bermudez's discriminatory conduct in violation of Title VII.

## COUNT IV – CIVIL RIGHTS VIOLATION
## UNDER 42 U.S.C. 1983 AGAINST DORAL

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

94. 42 U.S.C. Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

95. Doral is a "person" for purposes of Section 1983 and Doral is therefore a proper defendant in this Section 1983 Action.

96. Doral, under color of law, by the enforcement of a municipal policy, a municipal practice, or a decision of a municipal policy maker, subjected Plaintiff to the deprivation of her right to Freedom of Association pursuant to the First Amendment to the United States Constitution, and is therefore liable for the damages and other relief sought in this Action.

97. Plaintiff was an employee of Doral until her constructive termination from employment in or about April 2018.

98. For the majority of Plaintiff's employment, and at all times relevant hereto, the City of Doral's Mayor and top official was Mayor Bermudez.

99. Upon false information and belief, Mayor Bermudez and Chief Gomez believed that Plaintiff was associated with Council Member Sandra Ruiz.

100. Plaintiff did not have any personal, professional, or political associations with Ms. Ruiz.

101. Nonetheless, assuming any association existed, this would be outside the scope of Plaintiff's duties with Doral, and constituted an individual, legally protected association under the First Amendment to the United States Constitution.

102. It was the policy and practice of Doral and the Doral Police Department, by and through Mayor Bermudez and other employees, agents, officers, and appointed officials, to not associate with political adversaries such as Ms. Ruiz.

103. Throughout his tenure, and as Doral's top policy maker, Mayor Bermudez would command and direct the Doral Police Department chiefs, including Chief Organvidez and Chief Gomez, to forbid any officer and/or employee from associating with Ms. Ruiz. Any violation of his command would result in the employee's termination, like Detective Rodriguez.

104. Due to a false information and belief that Plaintiff was associating with Ms. Ruiz, Doral, through Mayor Bermudez, Chief Gomez, and Major Seiglie, and their agents, employees, servants, officers, captains, and lieutenants, threatened Plaintiff with termination and/or adverse employment action on various occasions if she communicated and/or associated with Ms. Ruiz.

105. Due to false information and belief that Plaintiff was associating with Ms. Ruiz, Doral discriminated, retaliated against, and constructively terminated Plaintiff.

16

106.    Doral provided pretextual and false reasons for its disciplinary actions towards Plaintiff.

107.    Specifically, Doral allegedly constructively terminated Plaintiff, in part, because she was leaving the city limits while on duty and was inputting payroll information for other employees.

108.    The proffered reasons were mere pretexts for the violation of Plaintiff's First Amendment right to Freedom of Association as Plaintiff was doing the aforementioned at the direction of and with the permission of her supervisors and employers, including Major Jose Seiglie.

109.    As a direct and proximate result of Doral's actions in violation of Plaintiff's First Amendment right to Freedom of Association, Plaintiff has incurred and continues to incur damages, including without limitation lost wages, lost benefits, lost promotions, lost perquisites, termination, and other lost remuneration and economic opportunities.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Doral awarding Plaintiff compensatory damages as well as costs, interest, attorneys' fees, and any such further relief this Court deems just and proper.

## COUNT V– VIOLATIONS OF DORAL'S MUNICIPAL CHARTER

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

110.    The Municipal Charter of the City of Doral was adopted by the people of Doral to secure for themselves the benefits and responsibilities of a home rule.  Accordingly, the Charter sets forth the rules governing the conduct of the City Council and its employees.

17

111.     Doral violated the Charter in connection with the unlawful termination of Plaintiff, including making false representations to the public, failing to follow proper procedures, and unlawfully interfering with the Doral Police Department and its employees.

112.     Specifically, Doral, by and through its employees, agents, servants, and Mayor Bermudez, violated Article IV, Section 4.02(c)(i), which holds, in pertinent part:

    a.  Except for the purpose of inquiries and investigations made in good faith, the Council or its members shall deal with officers and employees of the City who are subject to the direction and supervision of the Manager *solely* through the Manager, and *neither the Council nor its members shall give orders to any such officer, employee, either publicly or privately.* It is the express intent of this Charter that recommendations for improvement in City government operations by individual Members of the Council be made solely to and through the Manager. (emphasis added).

113.     Doral violated the above section when its mayor, Mayor Bermudez, a member of the council, interfered with and ordered members of the Doral Police Department, such as Chief Organvidez and Chief Gomez, to punish, discipline, terminate, threaten, and/or harass any police officer, including Plaintiff, that associated with Ms. Ruiz.

114.     Doral condoned and/or ratified the aforementioned conduct.

115.     As a result of Doral's violations of the Charter, Plaintiff was terminated from her job and has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Doral awarding Plaintiff damages as well as costs, interest, attorneys' fees, and any such further relief this Court deems just and proper.

## COUNT VI
## VIOLATION OF THE CONSTITUTIONAL RIGHT TO FREE SPEECH
### (First Amendment Retaliation)

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

116.     The United States Constitution's First Amendment guarantee to free speech applies to local and state governments through decisions of the United States Supreme Court, as well as through the Fourteenth Amendment.

117.     At all times relevant hereto, Plaintiff was an employee of Doral.

118.     Doral is a municipal government.

119.     During her employment with Doral, Plaintiff participated in, and made certain disclosures during several investigations by local and federal government agencies, including Doral and FDLE, regarding Doral's and Chief Gomez's alleged improprieties.

120.     Plaintiff made several disclosures concerning improper conduct by members of the City Council and the Doral Police Department to the public.

121.     The statements and disclosures made by Plaintiff to the state and federal government agencies, as well as to the public, involve matters of public concern.

122.     At all times material hereto, Doral was aware of Plaintiff's participation in the local and federal investigations and of certain disclosures she made.

123.     The statements and disclosures did not disrupt the function of the City of Doral.

124.     In violation of Plaintiff's First Amendment right to free speech, the City of Doral, acting through its Mayor and City Council, harassed, discriminated, and terminated Plaintiff's employment in retaliation for the statements and disclosures she made.

19

125.     After Plaintiff's protected disclosure, the retaliation and harassment were continuous up to Plaintiff's termination.

126.     As a result of the Doral's retaliatory termination in violation of the First Amendment, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Doral awarding Plaintiff damages as well as costs, back pay, interest, attorneys' fees, and any such further relief this Court deems just and proper.

<u>**COUNT VII - VIOLATION OF THE LAW ENFORCEMENT OFFICER BILL OF RIGHTS BY DORAL**</u>

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 66 as if fully set forth herein.

127.     The City of Doral failed to comply with the statutory requirements and due process guarantees of the Police Officer Bill of Rights in Fla. Stat. § 112.532 when constructively terminating Plaintiff's employment.

128.     Doral failed to make the charges involving Plaintiff's alleged violation in writing with sufficient specificity so as to fully inform her of the nature and circumstances of the alleged violation in order that she may be able to properly defend herself.

129.     Doral commenced an Internal Affairs Investigation after Plaintiff was terminated to conceal their illegal activity in violation of Fla. Stat. §112.532.

130.     Doral failed to provide Plaintiff with a meaningful opportunity to rebut the charges against her and to address the alleged violations pursuant to Fla. Stat. § 112.532(4)(b). Instead, Plaintiff was informed that she would be terminated if she did not resign.

20

131.    Doral City of Doral failed to comply with the statutory requirements and due process guarantees of the Police Officer Bill of Rights in Fla. Stat. § 112.532-534 by ratifying the actions of its employees, agents, servants, and law enforcement officers.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Doral awarding Plaintiff damages as well as costs, interest, attorneys' fees, and any such further relief this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated this 8th day of January 2020.

Respectfully submitted,

s/Robert L. Switkes
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
s/Maryjeanne Marrero
Maryjeanne Marrero, Esq.
Florida Bar No.: 1011715
mmarrero@switkeslaw.com
SWITKES & ZAPPALA, P.A.
407 Lincoln Road, Penthouse SE
Miami, Beach, Florida 33139
Telephone: (305) 534-4757
*Attorneys for Plaintiff*

21